**In the Matter of Robert Kenneth CONKLIN, Bankrupt.**

**No. 70 B 1090(2).**

United States District Court,
E. D. Missouri, E. D.

Nov. 23, 1971.

Joseph Langworthy, Pacific, Mo., for Bankrupt.

MEMORANDUM AND ORDER

REGAN, District Judge.

For determination on this petition for review is the claim of bankrupt to entitlement to the exemption granted by Missouri statutes to the "head of a family." [1]

Bankrupt is the divorced father of three young children whose custody was awarded to their mother by the divorce decree which provided that bankrupt pay $50 per week for their support. In this situation, contending that all other facts are irrelevant, bankrupt argues that Murray v. Zuke, 8 Cir., 408 F.2d 483, is decisive. We do not agree.

The narrow contested issue which *Murray* decided was simply whether a person claiming the "head of the family" exemption must live in the same house as the family he claims to head. In resolving this issue, the Court concluded that the Missouri courts "have not imposed residing with the family as an absolute requirement for qualification under the general exemption statutes." On this premise and under the

---

1. Sections 513.435 and 513.440 V.A.M.S.

undisputed facts which showed that the divorced father was fully complying with the support provisions of the divorce decree and therefore was "discharging his legal and moral obligation in supporting his minor children," the Court held that he was entitled to claim the status of "head of the family."

■ We are, of course, bound by *Murray* but do not believe it rules the instant facts. There are similarities. In *Murray*, as here, bankrupt was a divorced father of three minor children who lived with their mother. And in *Murray*, as here, the divorce court decreed that the father pay the sum of $50 per week for child support. At this point the similarity between the two cases ends. Murray was making the support payments decreed by the court. Bankrupt in the instant case has not done so. During the twenty-one week period immediately preceding the filing of the bankruptcy petition, the bankrupt paid only $435 toward child support, although the amount actually due during said period was $1,050. The records before the referee show that in the four week period preceding bankruptcy, the payments by bankrupt (none of which exceeded $25) aggregated the sum of $70. The referee also found, inter alia, that the bankrupt was employed at a gross weekly salary of $140, of which his take-home pay was $108. On the other hand, his former wife, the mother of the children, was earning $350 per month, of which $320 was her take-home pay. The referee further found that the mother of the children is presently contributing some 75 per cent of the total amount necessary for their support. On his appraisal of the evidence as a whole, the referee found as a fact that bankrupt was not, at date of bankruptcy, head of a family. In our opinion, this finding is not clearly erroneous and must be sustained.

The precise facts here involved have not been considered by the Missouri courts, so that, to the extent possible, we look to *Murray* for guidance. The opinion therein clearly limits the holding to the precise facts there presented and carefully avoids stating a general rule as to when a person is entitled to the "head of a family" exemption. The Court there stated (408 F.2d l.c. 487),

"The definition of any word or phrase must be considered in the factual context in which it is used or applied. Similarly any decisional construction of the phrase 'head of a family' must be viewed in the light of the circumstances to which it is applied. No Missouri case has undertaken to enunciate an all-inclusive precise definition of the phrase and it may well be that the phrase is incapable of an all-inclusive precise definition, particularly in view of the manifold factual circumstances that can develop in this field.

"We, therefore, feel that more than one non-inclusive definition is permissible and necessary to cover varying contexts."

The Court then concluded that "a divorced father who is discharging his legal and moral obligation in supporting his minor children, should, as against general creditors, be entitled to claim the status as head of a family under the Missouri exemption laws." Under the facts as found by the referee, the bankrupt-father neither recognized nor discharged his legal obligation under the divorce decree to support his children, and therefore the referee could find under the evidence as a whole that he should not be considered to be the head of the family.

What *Murray* says is simply that under Missouri law the father is *presumed* to be the head of the family and that this presumption was not overcome in that case simply by showing that the children were not living with the father. The presumption that the father is head of the family is not conclusive. In the instant case the presumption was overcome in the judgment of the referee by the fact that the father was not discharging his obligation to support his minor children and that the mother, with whom the children were living, was the major source of their support.

Bankrupt urges that in spite of the care taken by *Murray* to limit the decision to the precise facts there involved, the Missouri case of Biffle v. Pullman, 114 Mo. 50, 21 S.W. 450 (1893) which was cited in *Murray* controls here. There is, of course, a superficial resemblance between the cases in that *Biffle* sustained an exemption claimed by a divorced father who was obligated to support his children, the custody of whom had been awarded to his former wife. *Biffle* involved a homestead exemption claim. *Murray* considered that case relevant because the claim was allowed "in spite of the fact that [the father] was divorced and neither living with nor managing the household affairs of his former wife and children." However, the question actually involved in *Biffle* was not whether the judgment debtor was the head of a family at the time of the levy directed against the claimed homestead, but rather whether the homestead was still in existence. *Biffle* can be best understood in light of the general rule followed by the Missouri courts both before and after *Biffle,* "once a homesteader, always a homesteader." Bushnell v. Loomis, 234 Mo. 371, 137 S.W. 257, 263, a decision of the Missouri Supreme Court, en banc.[2]

The Missouri rule is well stated in Elliott v. Thomas, 161 Mo.App. 441, 143 S.W. 563, 564, (citing *Biffle* and the earlier case of Beckmann v. Meyer, 75 Mo. 333):

> "If the family relation is once established, and, *while that relation exists,* the right of homestead is acquired by the head of the family, then, *as long as he occupies the homestead as his home, he may hold it as exempt, even though the other members of the family may all die or be dispersed and he be left alone.* ⁎ ⁎ ⁎ This latter position, however, does not militate against the general rule that the family relation must exist *before* the

right to a homestead exemption can attach."

In Beckmann v. Meyer, the court held that a widower, without dependent children, who had some years earlier (while the head of a family) acquired a homestead *did not lose it·* "by the death or absence of his wife or children, if he continued to occupy it." And in Martin v. Cox, Mo., 199 S.W. 185, it was held that a homestead acquired by a head of a family *"remained* with her, although her children and other dependents may have left her."

What these and other Missouri cases make clear is that although a homestead may be acquired only by the head of a family, such status *need not continue* in order that the homestead right remain with the former head of the family. On the other hand, the exemptions allowed by Sections 513.435 and 513.440, V.A.M.S. may be claimed only if the debtor's status as head of the family is existent at the time of the levy of an execution. See Paddock v. Lance, 94 Mo. 283, 285, 6 S.W. 241, 242, expressly stating that the right of exemption (under the predecessor statute to Section 513.440) "is a different thing from a homestead exemption." *Biffle* is not dispositive of the fact issue decided by the referee.

Under the facts here present, demonstrating that bankrupt was not discharging his legal and moral obligation in supporting his minor children living with the mother, and whose claim to the family exemption is based solely on the presumption that a father is the head of a family, we hold that the referee was fully justified in finding as a fact that bankrupt was not the head of a family at the date of bankruptcy, whatever may have been his status prior to the divorce.

Accordingly the order of the referee overruling bankrupt's exceptions to the report of the trustee should be and it is hereby affirmed, and the petition for review is dismissed.

---

2. Except, of course, where the homestead is abandoned, as by leaving it with no intention to return.