FREDERICK W. FOUT *et al.*, Appellants, v. CHARLES E. GIRALDIN *et al.*, Respondents.

St. Louis Court of Appeals, December 10, 1895.

**Money Had and Received:** RECOVERY OF PAYMENT FOR DURESS. The plaintiffs mortgaged their land to secure a loan, and as further security transferred to the mortagees the rents of this and other land. The plaintiffs tendered payment of the loan when they were entitled to pay it, but the mortagees refused to accept the tender, or to release their security, unless they should further be paid certain compensation to which they were not entitled under the existing circumstances though they might have earned the same under other conditions, whereupon the plaintiffs, in order to secure such release, complied with this demand under protest. *Held*, that the further sum thus wrongfully exacted and paid could be recovered as paid under duress.

*Appeal from the St. Louis City Circuit Court.*—HON. P. R. FLITCRAFT, Judge.

REVERSED AND REMANDED.

*Merrifield W. Huff* for appellant.

*Lubke & Muench* and *Lambert E. Walther* for respondents.

BIGGS, J.—The circuit court held, on demurrer, that the petition in this cause did not state a cause of action. The plaintiffs having declined to amend, final judgment was entered on the demurrer. Omitting the caption, the petition is as follows:

"Come now the plaintiffs, and by leave of court file this, their amended petition, and for cause of action state that defendants are, and at the time hereinafter mentioned were, partners engaged under the name of Giraldin Bros. & Cates, in the city and state aforesaid,

in the real estate business and in loaning money for themselves and others, and in collecting rents as agents for others.

"That heretofore, to wit, on or about the fourteenth day of September, 1893, plaintiffs borrowed from defendants the sum of three thousand five hundred ($3,500) dollars, and executed to defendants their negotiable promissory notes, being one note whereby they promised to pay defendants, on or before six months after date, one thousand ($1,000) dollars; one note whereby they promised to pay defendants, on or before twelve months after date, one thousand ($1,000) dollars, and one note whereby they promised to pay defendants, on or before eighteen months after date, fifteen hundred ($1,500) dollars, all of said notes bearing interest from date at the rate of eight per cent per annum, the payment of which notes was secured by a deed of trust duly recorded in the recorder's office of the city of St. Louis, which deed of trust conveyed to a trustee certain property therein described, and provided that, if any one of said notes whether of interest or principal, after having become due and payable, should remain unpaid, then all of said notes shall become due and payable at once, whether due on their face or not.

"Plaintiffs further say that, in order to still further secure the payment of the loan so made, they executed and delivered to said defendants their joint agreement, by the terms of which they assigned, transferred and set over, unto said defendants all the rents and profits accruing out of the real estate mentioned in said deed of trust, and also assigned to defendants all the rents and profits accruing from other property in said agreement described, being in all the rents and profits for fifteen houses owned by plaintiffs, and they gave to defendants full power to collect the rents from all of said property, and, after deducting from the rents so

collected all costs for repairs, and two and one half per cent for collecting, was to apply the balance towards the reduction of said notes, which agreement was to be and remain in force until the whole of said indebtedness represented by said notes and secured by said deed of trust was fully paid and satisfied—which agreement was duly recorded and became a duly recorded lien against said property.

"Plaintiffs further say that on or about the ——— day of May, 1894, one of said notes above described became due, and defendants threatened to sell the property if it was not paid, as they had a right to do under this deed of trust, whereupon plaintiffs elected, as they had a right to do, to pay off the whole of said indebtedness, and they thereupon tendered to defendants and offered to pay them the whole amount, principal and interest, due upon all of said notes, and demanded from the defendants that they should release from record said deed of trust and said agreement, and should return to plaintiffs the said notes and agreement.

"Plaintiffs further say that notwithstanding the duty of the defendants in the premises, and notwithstanding said tender of said amount, said defendants refused to release said deed of trust, and refused to release said agreement or to reassign to them said rents and profits which were to become due and payable, until plaintiffs had paid to them two and one half per cent on the estimated rents to become due on said property during the whole of the time until the last note came due, which amounted to five hundred and eighteen ($518) dollars, and defendants demanded the said sum of five hundred and eighteen ($518) dollars in consideration of the release of said agreement and reassignment of said rents.

"Plaintiffs further say that no part of said five hundred and eighteen ($518) dollars was owing by

plaintiffs to the defendants, but that by said agreement their whole property as aforesaid was affected by said lien, and was so incumbered that they could not convey or otherwise use the same until said liens were released, and they were in fear that their whole property might be sacrificed, unless they paid said illegal and unjust demand, and were afraid that they would be compelled to leave said property under the control of defendants during the whole of the time that said notes were maturing; whereupon, through fear of being deprived of the use and benefit of the rents of their property accruing to them from time to time and becoming due from time to time, and that they might be released from the burdensome terms of said agreement or power of attorney, and in order to release said property from the charge and control of defendants and that they might have the full enjoyment and possession thereof, and that in order to release the rents of their property from the control of the defendants, and that they might be enabled to collect said rents themselves and thus escape payment of said charges, and that defendants might not further have the right at any future time to demand the sale of said property under said deed of trust or continue to collect said rents, and through fear of being compelled to pay more than the just demands of defendants, and through fear of losing said rents then due and to become due, they were compelled to pay to said defendants the said sum of five hundred and eighteen ($518) dollars, which they did pay on the ——— day of May, 1894, and at the time protested against the payment thereof.

"Plaintiffs further say that such demand was illegal, unjust and without consideration, and it was made by plaintiffs through fear of losing their rents and profits, and through fear of having their property sold under said deed of trust, and under protest; hence

they ask for a verdict against defendants in said sum of five hundred and eighteen ($518) dollars, with interest thereon from the date of payment, and for costs herein.''

There can be no question that the amount exacted by the defendants was not justly due. By the terms of the notes the plaintiffs were at liberty to pay the debt at any time. The only question is, whether the payment of the additional sum was ''compulsory'' in a legal sense. The general rule now is that duress exists when there is an arrest of the person or seizure of the goods, or a threat, or attempt, to do one or the other. Under the ancient common law it could only exist where the party was under arrest, or was threatened with arrest. But courts of law departed from that rule and construed the detention, or threatened detention, of goods as a kind of moral duress, and Lord KENYON, in the case of *Falham v. Down*, 6 Esp. 26, went a step farther and held that an action for money had and received would lie when an illegal demand had been paid under an urgent necessity. He there stated the rule as follows: ''That where a voluntary payment was made of an illegal demand, the party knowing the demand to be illegal, *without an immediate and urgent necessity* (* * * unless to redeem, or preserve his person or goods), is not the subject of an action for money had and received.'' This statement of the rule, when applied with proper discrimination, will be found to work justly. It has been recognized and applied in this country, and has been quoted approvingly by our supreme court. *Claflin v. McDonough*, 33 Mo. 412. Thus, in the case of *Baker v. City*, 11 Ohio St. 534, the plaintiff was a theatrical manager and the city required him to take out a license. He did so under protest. In the action to recover back the amount paid, the supreme court held that, if the license had been without legal

warrant, the city would have been compelled to refund, for the reason that the plaintiff had made all the necessary arrangements for the play or exhibition, and that there was an urgent or immediate necessity for him to have the license. This was a proper case for the application of the rule. But it was improperly invoked in the case of *Hackley v. Headley*, 45 Mich. 570. There the plaintiff was financially embarrassed, and had immediate and urgent use for the money which the defendant owed him. The defendant unjustly and without reason disputed a portion of the debt, and on account of his pressing necessities the plaintiff accepted the smaller sum in discharge thereof. In a suit to recover the remainder of the debt the supreme court of Michigan held that there was no duress, for the reason that the defendant was not responsible for plaintiff's financial condition which made the immediate collection of the former's debt imperative, except in so far as he had failed to pay it when due. This case upon the facts was correctly decided; for, otherwise, there would be no safety or permanency in settlements made with the needy. The court distinguished that case from that of *Vyne v. Glenn*, 41 Michigan, 112. In the latter case the judgment was the other way. There the financial embarrassment of the plaintiff was shown and the withholding of money lawfully due, but it also appeared (and in that its facts differed from the Hackley case), that the defendant had unlawfully interfered between plaintiff and his other debtors, by means of which he had stopped payment of their debts. This was the ruling fact in that case, which, in the opinion of the court, was equivalent to duress of goods.

Now, in the case at bar, we have a state of facts somewhat similar to those presented in the Vyne case, and the fact which controlled the decision there stands out prominently here. As additional security for the

payment of the mortgaged debt, the defendants held an assignment of the rents of the property conveyed by the deed of trust, as well as the rents arising from fifteen other houses, and sole authority to collect the rents was conferred on them, thus practically putting them in the. actual possession or control of the property. When the plaintiff offered to pay off the loan, which he had the undisputed right to do, the defendants refused to reassign the rents or surrender their control over the property, unless their unlawful demand was complied with. This action of the defendants must be regarded as a threatened interference between plaintiff and the tenants in possession of the property, which, if persisted in, would probably have resulted in the refusal of the tenants to pay rent to plaintiff or to surrender to him the possession of the property. A condition of affairs was thus presented which required of plaintiff immediate action in order to regain control of his property and to free it from the lien of defendants' mortgage, thereby protecting himself from probable loss of rents and enabling him to borrow money on the property to pay the mortgaged debt, and also to avoid the threatened interference with the payment of rents to him, which threat, if carried out, would have been equivalent to a detention of his goods. Thus, we think, the facts bring the case fairly within the operation of both rules. Our conclusion is that, under the facts stated, the money was paid under duress, and, therefore, the demurrer was improperly sustained.

With the concurrence of the other judges the judgment of the circuit court will be reversed and the cause remanded. It is so ordered.