# FREDERICK DEIBEL, Appellant, v. JEFFERSON BANK, a Corporation, Respondent.

**St. Louis Court of Appeals.    Opinion Filed January 7, 1919.**

1. **BANKS AND BANKING: Assets of Bank Impaired: Directors Paying in Sum to Replace: Consideration.** Where in the judgment of the clearing house of a bank, the bank's surplus as well as part of its capital was impaired, and the bank was notified that unless a specified sum of money was immediately added to the assets of the bank, the right to clear through such clearing house would be denied the bank, with the result that the bank would have had to close its doors, and thereupon plaintiff, with certain of his associate directors of the bank, paid into the bank such sum of money, and in lieu of which, certain assets were then by a resolution of the board transferred to a trustee for the benefit of plaintiff and his associate directors, such assets thereupon being charged off the books of the bank, and no formal action on the part of the board of directors of the bank having been taken agreeing to repay this money if or when the bank should have earned it, and such sum of money being necessary to prevent the bank from suspending, which would have caused a financial loss to plaintiff and his associate directors, etc., *held*, that there was sufficient consideration to support the transaction.

2. ————: ————: ————: ————: **Trustees.** And, in such case, *held*, that plaintiff and his associate directors could not recover the money paid into the bank by them on the theory that they must be considered trustees for the stockholders of the corporation and as such entitled to be indemnified against liabilities incurred or moneys advanced as directors for the benefit of the corporation.

3. **CONTRACTS: Duress.** A contract procured by duress is not void, but voidable only; and, if a party elects to repudiate it, he must do so within a reasonable time after the duress has been removed.

4. ————: ————: **Ratification of Contract.** Furthermore, where there is an unreasonable delay after the alleged duress has been removed, accompanied by acts which recognized the contract, such amounts to an express ratification thereof and an election to abide thereby.

Appeal from the Circuit Court of the City of St. Louis.
—*Hon Kent K. Koerner,* Judge.

AFFIRMED.

*Smith & Pearcy* for appellant.

(1) The money advanced by the plaintiff was a loan to the defendant and was to be repaid as soon as the bank was in a condition to do so. The evidence showed that the bank later was able to pay after the crisis had passed which required the loan of the money. (2) The Jefferson Bank received from the plaintiff $2500 which in equity and good conscience the defendant should pay over to plaintiff. The action of the money had and received is favored by the courts and is so flexible in form and relief that it levies tribute indifferently on equitable, as well as strictly legal principles. Bank v. Bank, 244 Mo. 554, 581. (3) Clearly, under the facts disclosed, the plaintiff made out a case to go to the jury. Where a party receives money under circumstances showing that the money was not a voluntary donation or gift, the law implies a promise to repay. Such promise need not be expressed, but will be inferred under the law, from the facts surrounding the case. (4) Directors of a bank are trustees. 3 Cook on Corporations (7 Ed.), p. 2010, sec. 648. They are bound to use their best judgment and discretion as such trustees to take all necessary actions that may be required to prevent loss or damage to the corporation, its stockholders and creditors. There is no duty on a trustee to advance money for his *cestui que trust.* If, however, he does so far the purpose of preserving the estate or interests of his *cestui que trust,* under the law he is entitled to recover such advance from the *cestui que trust,* where the money so advanced was not a gift or voluntary donation. 2 Perry on Trusts (6 Ed.), p. 791, sec. 485; Snyder's Appeal, 72 Mo. 253; Beck v. Kinealy, 89 Mo. App. 418; Hardson v. Belilios (1901), A. C. 118; German Min. Co. ex parte Chippendale (1853), 4 D. M. & G. 19. (5) The doctrine of duress at common law has been greatly enlarged. American Brewing Company v. City of St. Louis, 187 Mo. 367. The courts have extended the doctrine of the early common law with regard to compulsory pay-

ments and the modern rule is not to attempt to lay down any definite and exact rule of universal application to determine whether a payment is voluntary or involuntary. American Brewing Co. v. City of St. Louis, 187 Mo. 367. If one is compelled by business necessity to surrender to the constraint involved in an unlawful demand and make a payment of money, moral duress appears. In other words, in such circumstances, it may be found as a fact that the party paying has not had the freedom of exercising his will, and paid the money under moral duress in which event it is against equity and good conscience for the money to be withheld from the plaintiff. Brown v. Worthington, 162 Mo. App. 508; Niedermeyer v. Curators of State University, 61 Mo. App. 654; Font v. Giraldin, 64 Mo. App. 165; Wells v. Adams, 88 Mo. App. 215; American Brewing Co. v. St. Louis, 187 Mo. 367, 377; Westlake v. City of St. Louis, 77 Mo. 47, 30 Cyc, pp. 1303-1305. (6) In the scheme required by the Clearing House in carrying out the transaction imposed upon the plaintiff and his co-directors they had nothing whatever to do with the selection of the collateral that was to be replaced by the money. The evidence shows that the Clearing House, through its representative, Mr. French, drew up the papers necessary to complete the transaction, wrote the minutes that were to be adopted by the corporation and selected the debts that were to be charged off as purchased by the money advanced. It also showed that they required this property to be taken out of the bank as assets. Under these facts, there clearly was duress. (7) There is no estoppel in this case. The bank and not the stockholders is the defendant. Plaintiff has done nothing to injure the bank or its assets (if considered as a trust fund). In fact, everything that was done by the plaintiff was for the benefit of the bank and the preservation of its assets (if considered as a trust fund) and not to its detriment or damage in any way. An estoppel must be mutual before it can be asserted and there is no mutuality that will support an estoppel in this case. (8) The alleged

injury which defendant insists will be sustained by purchasers of stock subsequent to the transaction of April, 1909, is not an injury to the defendant and is not one that can be complained of in this action by the defendant. If there is such an injury, the stockholder alone can complain as to a loss that has been sustained by him individually and not by the defendant and not to the defendant's assets (if considered as a trust fund). (9) The Record shows that the capital of the Bank was $200,000, represented by 2000 shares of stock. The Record fails to show the identity of any subsequent purchasers of stock. If the defendant's position was correct as to subsequent purchasers this would not apply to holders of stock who knew of the transaction or those who have owned the stock since April, 1909. For all that the Record shows there are no new stockholders since that time.

*A. & H. N. Arnstein* for respondent.

(1) Where directors of a bank, whose capital is impaired, pay funds into its treasury to restore its capital and save it from liquidation, such transaction is a donation or gift to the bank, and creates no obligation for its return. Wright v. Gurley, 133 La. 746; Interstate Trust Banking Co. v. Irwin (La.), 70 So. 313-317; Bidwell v. P. & O. R. R. Co., 114 Pa. St. 535; Broderick v. Brown, 69 Fed. 497; Best v. Thiel, 79 N. Y. 15; Leavitt v. Oxford Geneva S. M. Co., 1 Pac. 356; Hurd Rec. v. Kelly, 78 N. Y. 588. (2) The interest which bank directors have as stockholders to save the bank from failure, the saving of their own stock therein from being wiped out, and their natural obligation to make good an impairment of its capital, is a sufficient consideration for such payment, if a consideration is necessary. Hope Mutual Life Ins. Co. v. Perkins, 38 N. Y. 404; Union Bank v. Sullivan, 214 N. Y. 332; Interstate Trust Banking Co. v. Irwin, 70 So. 317; Hurd v. Kelly, 78 N. Y. 596; First National Bank v. Henry 202 S. W. 280, l. c. 282 (K. C. Ct. App.). (3) The agreement of the Clearing House to continue to clear

the bank's paper, upon condition that the directors contribute $20,000 to the assets of the bank, was a valuable consideration for such payment. Marks v. Bank of Missouri, 8 Mo. 316; Houck v. Frisbe, 66 Mo. App. 16; Brownlee v. Wollard, 66 Mo. App. 642; Forbes v. Railroad, 107 Mo. App. 674; Gesen v. Higham, 161 Mo. 333. (4) The test of defendant's liability to plaintiff under an implied promise to repay must be measured by the condition existing April 28, 1909, when the money was contributed. If, at that time, equity and good conscience demanded that it be repaid, it then constituted a liability, immediately due and payable. (5) Directors of a corporation can only bind it by resolutions adopted by vote in meeting assembled. 3 Cook on Corp. (7 Ed.), pp. 2435-6; Brinkehoff Zinc Co. v. Boyd, 192 Mo. 613; Charleville v. Washington Trust Co., 226 F. R. 400. The record is barren of all evidence that the bank borrowed the money from plaintiff. Informal conversations of the directors amongst themselves, not crystalized into a vote, cannot bind the corporation. (6) The most favorable theory of plaintiff's case is, that the directors informally discussed amongst themselves the probability of the money being returned to them, and that it would be repaid as soon as the bank "made the money," or "got in a position to do it," but no resolution to that effect was ever adopted; furthermore, the evidence is, that, had the bank at any time between April, 1909, and the date when suit was filed, repaid the money, it would have been in as bad or in a worse condition than when the money was contributed. (7) If the legal effect of the transaction of April 28th was as now contended by plaintiff, it was a farce, operated as a fraud on the Clearing House Association, and the statements submitted to the State Bank Commission sworn to by the plaintiff, and the statements published over his signature in the public press, were false and intended to deceive; on the faith of these published statements he was able to sell his stock to an unsuspecting public, and it does not lie in his mouth to invoke the doctrine of "equity and

200 M. A.—35

good conscience.'' Gate City National Bk. v. Miners & Farmers Bk., 259 Mo. 551, l. c. 574-56; Third National Bk. v. Reichert, 101 Mo. App. 252. (8) A payment made, under pressure, unless the demand for such payment was illegal, unjust or fraudulent, does not constitute duress. 9 Cyc. 450; 14 Cyc. 1123; Miller v. Davis Estate, 122 Pac. 793; Kansas City Ry. Co. v. Graham, 145 S. W. 632; Buchanan v. Sahlein, 9 Mo. App. 552; Wolff v. Marshal, 52 Mo. 171; Trust Co. v. Bank, 154 Mo. App. 89, l. c. 106; Knusden Fruit Co. v. Chicago Ry. Co., 149 F. R. 973; Wood v. Telephone Co., 223 Mo. 537, 557-8-9; Link v. Real Estate Co., 182 Mo. App. 531-6; Mee v. Town of Montclair, 86 At. 261; Newburyport Water Co. v. City, 103 Fed. Rep. 594. (9) Durress must be exerted by him who receives the benefit of the transaction, in order that the same may be avoided on that ground. 9 Cyc. 453; 22 Am. & Eng. Ency. 615; Radlich v. Hutchinson, 95 U. S. 210; Ballard v. Lefferman, 4 Gill. 425; Brumagin v. Tellinghast, 18 Cal. 265; Mays v. Cincinnati, 1 Oh. St. 268; Quincy v. White, 63 N. Y. 370. In the case at bar the Jefferson Bank did nothing; it was the Clearing House that exerted the pressure. (10) As the payment was not made under duress, and was made with full knowledge of all the facts, in the eye of the law it was a voluntary payment, and cannot recovered back. 2 Elliot on Contracts, sec. 1381; 30 Cyc. 1298, 1300; Union Savings Bank v. Kehlor, 7 Mo. App. 165; Morgan v. Joy, 121 Mo. 677; Bank v. Bank, 244 Mo. 587; Dustin v. Farrelly, 81 Mo. App. 380-385; Trust Co. v. Bank, 154 Mo. App. 106; Rhodes v. Dickeson, 95 Mo. App. 395-400; Goodell v. Goolet, 84 S. E. 414; Quincy v. White, 63 N. Y. 370; Hines v. Hamilton Co. Comm'rs, 93 Ind. 266; Morey v. Carlson, 27 Mo. App. 5. (11) It is axiomatic that courts cannot make contracts for the parties. Blaine v. Knapp Co., 140 Mo. 241; Meyer v. Christopher, 176 Mo. 580. (12) This resolution having been adopted one week after the money was in fact paid in, if duress therefore existed, this constituted a ratification of the transaction. National City Bank v. Wagner (C. C. A.),

216 F. R. 478-9. (13) Where a contract is obtained by duress, the party may either repudiate or affirm it. If he elect to repudiate, he must do so within a reasonable time after the duress has been removed; long acquiescence amounts to a ratification and bars recovery. Harms v. Wolf, 114 Mo. App. 395 (six months too long); Bushnel v. Loomis, 234 Mo. 382-3; Wood v. Telephone Co., 223 Mo. 557, 564-5; Taylor v. Short, 107 Mo. 384; City Light & Power Co. v. St. Mary Machine Co., 170 Mo. App. 224-231; National City Bank v. Wagner (C. C. A.), 216 F. R. 478-9; Miller v. Davis Estate (Cal.), 122 Pac. 793; Robinson v. Sipple, 129 Mo. 220-222. (14) A party desiring to rescind a contract because of duress must tender back what he has received, and place the other in *statu quo*. Yeater v. Hines, 24 Mo. App. 619; Robinson v. Sipple, 129 Mo. 220-1; Jarrett v. Morton, 44 Mo. 275; Field v. Roanoke Ins. Co., 123 Mo. 603. (b) If a note has been received, even though the maker be insolvent, it must be tendered back, to effect a rescission. O'Brien v. Jones, 38 Mo. App. 90-94; Spencer v. St. Clair Co., 57 N. H. 9; Evans v. Gale, 21 N. H. 240; Crossier v. Murphy, 31 Or. 114; Wood v. Telephone Co., 223 Mo. 537; Steamboat Co. v. Lunn, 9 Mo. 63; Whitcomb v. Denio, 52 Vt. 382. (c) And this must be done unequivocably and within a reasonable time. Whitney v. Bissell, 146 Pac. 141; Field v. Roanoke, 123 Mo. 619. (15) Assuming that the agreement under which the title to the assets was transferred to Kroeger was brought about by duress, the plaintiff, as late as 1913 (four years thereafter), accepted and retained the proceeds thereof, and his trustee still retains the balance of the assets; plaintiff also during a period of two years after the transaction, as a director of defendant, made sworn statements of its condition to the State Bank Commissioner, in which he denied that the $20,000 was a liability of the bank, and like statements were made by him for publication in the daily press; the lapse of time and his affirmative acts bar him from now questioning the legality of the contract. Harms v. Wolf, 114 Mo. App. 338; 16 Cyc.

787; 9 Cyc. 443, and Authorities cited under Point 16.

BECKER, J.—This is an action by plaintiff, against defendant bank, as for money had and received. At the close of plaintiff's case the defendant's demurrer to the evidence was sustained and plaintiff took an involuntary nonsuit with leave to set same aside. From the action of the trial court in overruling plaintiff's motion for a new trial, plaintiff brings this appeal.

The plaintiff's petition is in three counts. First, that plaintiff loaned to the bank the sum of $2500, which the bank was thereafter to repay with interest. Second, that the defendant received $2500, which the defendant has retained for its own use and benefit and which the defendant should repay to the plaintiff, together with interest. The third count alleged facts which in plaintiff's view are tantamount to alleging that plaintiff, under duress, had paid into the bank the sum of $2500, but with the understanding, however, that if and when the bank's profits should have amounted to a sum sufficient to enable it to repay the same it would repay to plaintiff the said amount, and that the bank's financial condition had reached that point which did enable it to repay, but though demand had been made, payment had been refused and therefore in equity and good conscience plaintiff should have judgment against the defendant for the sum in question.

According to the testimony the defendant is a bank located in the city of St. Louis, in which city it appears no bank can exist without what is termed "clearing house facilities." This "clearing" is done by and through the means of the Clearing House Association, of which the larger financial institutions of said city are members while the smaller ones which are not accepted as members are permitted to make their clearings through some bank which is a member of the association. The defendant bank was not a member of the association but had the privilege of clearing through a bank which held membership.

In April, 1909, the Clearing House Association, which had theretofore had considerable trouble in handling the clearings for defendant bank, became convinced that the surplus and capital of the defendant bank were impaired. The directors of the clearing house at short notice summoned the directors of the defendant bank to appear before them at an executive session. The plaintiff, an owner of 700 shares of the capital stock of the defendant bank, as one of its directors appeared before the clearing house committee, together with his associate directors of the defendant bank, with the exception of Mr. Blanke, a director, who was out of the city at the time.

At this meeting the chairman of the clearing house committee announced to the assembled directors of the defendant bank that by reason of the defendant bank's financial condition the clearing house would not clear for the bank the next day unless the directors of the bank agreed to put up $30,000 in cash immediately. An attempt by the president of the defendant bank to protest against this ultimatum was promptly declared out of order. An opportunity was then afforded the directors of the bank to retire to an adjoining room to discuss the situation. When the directors of the bank had retired to the adjoining room they discussed the matter in groups of two or three and, according to the testimony, each of the directors present expressed himself to the effect that it would be necessary to acquiesce in the demand of the clearing house or the bank would be ruined. After discussing the matter at length the directors, with the exception of Mr. Berger, agreed to put up various sums which together would aggregate $20,000. Each of the directors thus agreeing to put up the money expressed his view that he expected that the bank should and would repay such sum as the directors put up when it would be in a position to do so. This proposition, that the directors of the bank pay in $20,000 instead of the $30,000 demanded, was put up to the clearing house committee and accepted.

The following day, April 28, 1909, there was a meeting of the board of directors of the bank at which a resolution was moved by Mr. Deibel, the plaintiff herein, and seconded by Mr. Blanke, another of the directors, and was carried. The resolution reads as follows: "That we charge off $27,000 of the surplus account and credit same to the profit and loss account."

At a meeting of the board of Didectors of the bank held on April 29, 1909, a resolution which had been prepared by the Clearing House Association, was sent to the bank for its adoption by the board of directors. This resolution was moved by Mr. Wall, one of the directors, and was seconded by Mr. Deibel, plaintiff herein, and was carried. Said resolution reads as follows:

"St. Louis, Mo., April 29, 1909.

"Whereas, the St. Louis Clearing House Association have required the Jefferson Bank to charge off the following notes: One note of Fred C. Meier for $4600, note of L. M. Hall for $1695.55, two notes of George H. Pohlman aggregating $1306.50, one note of E. Hollenbeck for $177.88, note of Star Vending Machine Company for $2160, acceptance of Clement Guion for $2340, and a balance on a note of C. H. Duncan of $599.92, and also to reduce the book value of the real estate belonging to the bank and known as "The Chestnut Street Property" by $2434.57, and also to reduce the book value of the real estate known as "The De Hodiamont Property" by $4685.58, being a total of $20,000; and,

"Whereas, certain directors of the bank have contributed the $20,000 to the assets of the bank necessary to make up the amount so to be reduced. Richard B. Bullock having contributed $3000. W. H. Steele $3000, Henry Wood $2500, Fred Deibel $2500, J. F. Conrad $2500, C. F. Blanke $2500, L. J. W. Wall $2500 and H. W. Kroeger $1500; and,

"Whereas, it was understood and agreed that the parties contributing the said $20,000 should have the

full benefit of the amounts realized from the assets so charged off on the part of the bank;

"Now, therefore, this is to certify that the Jefferson Bank will turn over to H. W. Kroeger as trustee any proceeds collected on the said note of Fred C. Meier, the said note of L. M. Hall, the said notes of George H. Pohlman, the said note of E. Hollenbeck, the said note of Star Vending Machine Company, the said acceptance of Clement Guion, and on the note of C. H. Duncan after whatever amount due on said note, and which has heretofore been charged off, has been paid to the bank; or, in other words, all that is realized on the Duncan note against the $599.92 so charged off on said note and made good by said directors. It is also understood and agreed by the Jefferson Bank that should the bank realize out of said Chestnut street real estate and said De Hodiamont real estate any of the $7120.15 charged off against the book value of said real estate, in the future, after reimbursing to the bank the full value of the real estate as the same is now carried by the bank, together with the interest thereon at 6 per cent, that then such of said $7120.15 as may be realized from said real estate shall also be paid to said Kroeger as trustee, it being understood that the bank is to hold the said notes in trust for the use and benefit of the said Kroeger as trustee for the parties contributing said $20,000.00 in the proportion that each party has contributed to said fund of $20,000.00.

"If at any time the parties for whom said Kroeger is trustee should desire any of said notes to be transferred to said Kroeger, or to any other trustee selected by them, the bank is to make the transfer without recourse on it.

"It is understood that should the said Kroeger die or be incapacitated to act, that then in that event the majority of the parties contributing to said $20,000 fund may select some other such person to act as trustee; and, upon notifying the bank of such selection, such

party shall have the same right that the said Kroeger has under this agreement.

JEFFERSON BANK,
By RICHARD D. BULLOCK,
President."

There is testimony that the several directors of the bank who participated in putting up the $20,000 were not informed at the original meeting with the clearing house committee that various notes, etc., which were held by the bank and listed in its assets, but which were at least of doubtful value, were to be charged off and turned over to some one as trustee for those of the directors of the bank who put up the $20,000, for their use and benefit.

Another resolution adopted by the directors of the bank is found in their minutes of the meeting of May 5, 1909. On motion of Mr. Wall, and seconded by Mr. Deibel, the plaintiff herein, it was resolved, "*to adopt the resolution hereto attached regarding the transfer of notes, etc., to directors for the amount of $20,000 paid by said directors. Motion carried.*" (Italics ours)

It appears that these various assets were in point of fact turned over to Kroeger, as trustee, and that on July 8, 1910, the plaintiff received and accepted $75 from Kroeger as trustee, as a pro rata payment out of moneys collected from the assets held by said Kroeger as trustee, and that on November 15, 1913, the plaintiff received and accepted from Kroeger as trustee, a further payment of $24.57, each of which payments were made by check, payable to plaintiff, the first signed, "H. W. Kroeger, trustee," the second signed, "H. W. Kroeger, trustee for directors."

At the time the clearing house insisted on the payment of the $20,000 the plaintiff was indebted to the bank personally in sums aggregating $29,000 and was contingently liable to the bank, as endorser of notes of companies in which he was interested, aggregating $30,000 more.

No credit entry of any kind was ever entered on the books of the bank in favor of the plaintiff or his

associate directors, or any of them, for the $20,000 they paid into the bank, the only formal action with reference thereto being that of the resolutions passed by the board of directors as above set out.

The plaintiff continued to be a member of the board of directors of the bank until 1911, at which time he failed of reelection. From 1911 on it appears that plaintiff at diverse times made sales of some of his holdings of stock in the bank until in February, 1914, a few months prior to the entering of this suit, plaintiff had finally disposed of all of the stock he had held in the bank.

The plaintiff testified that he had on several occasions made demand on the bank for the repayment of the $2500 that he had put into the bank; that he made such demand in 1909, 1910, and 1911; that the last time he made demand was in November or December, 1913, at a time when he had reduced his own obligations to the bank to $2500; that he spoke to Mr. Moberley, the then cashier of the bank and told him that he, Deibel, the plaintiff herein, was ready to pay the balance of $2500 that he owed the bank provided the bank would repay the $2500 which he had advanced to the bank; that Moberley answered that he didn't have any authority to make such a payment and that he could not pay him the $2500; that at the suggestion of Moberley he went to see Mr. Meissner, the president of the bank, to whom he made the same proposition that he had made to Moberley, but that Meissner replied that he didn't know anything about it and that the bank could not pay him the $2500. Plaintiff at no time offered to return the payments he had received from Kroeger, as trustee, nor did he offer to retransfer to the bank his interest in the notes, etc., held by Kroeger, as trustee.

Thereafter, in March, 1914, plaintiff filed suit. Upon a hearing, at the close of plaintiff's case, plaintiff took an involuntary nonsuit with leave to set the same aside, and, as stated above, in due course plaintiff filed his

motion for new trial, which was thereafter overruled, and plaintiff took an appeal to this court.

We are met at the outset with the contention that the trial court erred in giving the instruction in the nature of a demurrer to the plaintiff's evidence, and instructing the jury at the close of plaintiff's case that under the pleadings and the evidence the verdict of the jury must be for the defendant. It is argued that the testimony in the case shows that the money advanced by the plaintiff and certain other directors was not a voluntary gift but a loan to the defendant bank and was to be repaid as soon as the bank was in a condition to do so, and that the evidence further shows that the crisis which made it necessary for the $20,000 to have been advanced had passed and that the bank, prior to the institution of this suit was in such condition as warranted the repayment of this money; and it is contended that from these facts the law implies a promise to repay, a promise which need not be express, but a promise which will be inferred from the facts surrounding the case, and particularly so in such a case as this—an action for money had and received—an action so flexible in form and relief that it levies tribute indifferently on equitable as well as strictly legal principles.

To this view of learned counsel for appellant we cannot accede. For while the evidence adduced shows that the plaintiff, together with certain of his associate directors, did pay to the bank sums aggregating $20,000, upon the imperative demand of the clearing house that such action be taken immediately or the privilege of clearing through it would be denied the bank, yet there was no formal action on the part of the board of directors of the bank agreeing to repay this money if or when the bank should have earned it. All the testimony on this point was merely to the effect that there was talk among the directors, as individuals, that the bank should and would repay the money thus advanced by the said several directors when it was able to do so. For example, Fred Deibel, the plaintiff, himself testified on this point: "Well, I made my statement, in saying that

I would put up the money, provided that it would be returned to me. I considered it was a loan at the time; that I would not put up otherwise unless it was returned." . . . "Other members stated the same— made the same statement." And referring to a directors' meeting held on the 28th of April, 1909, he said: "Yes, before we were called together we discussed the matter about the money, how we were going to get it back." . . . "When the meeting was called to order we talked of the matter of what happened the day before, and we talked amongst ourselves and the board about how we were to get this money back. One stated whether the bank was going to give us its note for this money—another director stated—or an officer stated . . . I think some one else stated that we couldn't— *we had to take this paper and charge it against this twenty thousand dollars that the clearing house had marked off and sent up a list. So there was nothing else for us to do, and after it was discussed and—over that we had to accept what they handed us."* (Italics ours) "Mr. Bullock . . . stated, that we would get this money back—that is as soon as the bank made it." *"But no action was taken as such by the board of directors on this matter? A. No formal action because that would have defeated the very thing the clearing house insisted upon."* (Italics ours).

J. F. Conrad, a witness for plaintiff, on this point, testified: "I don't remember particularly who said anything but all of us expressed the opinion that it was in our own hands; *we were paying this money to ourselves and we would probably be paid back just as soon as we had some more surplus;* (Italics ours) as soon as we had some money." . . . "Well, we were all in the same boat and as soon as we made money to pay it back to ourselves again." In answer to the questions: "And all these talks that you had among yourselves was simply general talk between the members of the board? A. Between the people who put up. Q. By the people who put up the money? A. They were then in control of the bank. Q. They would talk among themselves

what the situation was? A. As soon as we make money we will pay that back to ourselves. Q. That was your personal expression or view? A. Amongst all of us. Q. Just talk at that time, personal expression? A. Yes, sir; we agreed on that. Q. *Never any note was given to you gentlemen for the twenty thousand dollars? A. No; that would have defeated the purpose of the clearing house.* Q. *.The very purpose of it then was to increase the assets without increasing the liabilities correspondingly, wasn't it? A. Well, I suppose that was the way.* (Italics ours) That was the pull on us to pay in this money. We didn't do it voluntarily; we were compelled to do it. . . . The bank would have went by the board and all our friends would have suffered. Q. And for that reason you acted as you did? A. Yes, sir.''

Cyrus F. Blanke, a witness for plaintiff, testified that he was a director but was not present at the meeting when the directors appeared before the clearing house, but that when he attended the meeting of the board of directors of the bank a day or two later he was informed of what had occurred and was told that they counted on him to raise $2500 of the $20,000 agreed to be put up, and that he told them he would do his share; that he put up the $2500 and that this $2500 was to be repaid him and to the other directors just as soon as the bank made it. ''Q. Who said it would be paid back to you? A. Mr. Bullock.'' . . . ''Q. But no-where on the books of the company, so far as you know, was this $20,000, or any part of it, carried as a liability of the bank? *A. No, sir; it was distinctly understood that it was not to be carried as a liability.*'' (Italics ours).

While we have this testimony of the several witnesses regarding what they understood and what was talked about amongst themselves relative to the repayment of the $20,000, it is uncontradicted that at the meeting of the board of directors on April 29, 1909, the resolution set out in full in the statement of facts herein, offered by Mr. Wall and seconded by Mr. Deibel, plain-

tiff herein, was formally adopted by the board, and formally carried out by resolution of the board on May 5, 1909. Plaintiff admits that in conformity with said resolutions the various items set out therein were in point of fact turned over to H. W. Kroeger, as trustee, and that on July 8, 1910, the plaintiff accepted from the said H. W. Kroeger, trustee, a check in the sum of $75.00, which check he cashed and retained the money obtained thereon, and that again on November 15, 1913, he accepted a check from said Kroeger, as trustee in the sum of $24.57, said money in each instance being his pro rata share of the funds on hand that had been collected by the said Kroeger as trustee, on the several notes, etc., in his hands, under the resolution of April 29, 1909; and furthermore, though plaintiff testified that he had several times demanded payment of the bank, yet up to the time of trial plaintiff had made no effort to have whatever items remained in the hands of Kroeger, trustee, tendered back to the bank.

Under these facts the learned trial judge, in our view, could not have done otherwise than have sustained the defendant's demurrer at the close of plaintiff's case. First, there was consideration for the payment made by plaintiff to the bank. The undisputed evidence shows that at the time the payment was made the bank's surplus, as well as part of the capital, in the judgment of the credit house clearing association, was impaired, and that unless the $20,000 had been immediately added to the assets of the bank the right to clear through the association would have been denied the bank, with the result that the bank would have had to close its doors. The plaintiff at that time was the holder of 700 shares of the capital stock of the bank, the value of which, had the bank been forced to suspend operation, would have been greatly lessened and thereby plaintiff would have suffered a considerable loss in the value of his stock. Furthermore, plaintiff then owed the bank on his own account $29,000 and was endorser on additional notes aggregating $30,000 for companies in which he was interested. These various loans would necessarily

have been called in for payment had the bank been forced to close. But by reason of the paying in of the $20,000 the bank continued to do business and some time before this suit was brought plaintiff was enabled to dispose of his shares of stock in the bank, and it is a fair presumption, from the record, that plaintiff sold his stock for a greater price by reason of the bank continuing as a going concern, showing, as it did, a considerable sum in its statement as surplus and undivided profits, than he would have gotten for his stock had the bank been forced to liquidate by reason of the clearing house refusing it the privilege to clear through it. All of these were matters which went to make up the consideration for the part of the $20,000 put into the bank by plaintiff, in addition to the notes, etc., which by resolution, seconded by and voted for by plaintiff, the bank turned over to Kroeger, as trustee, notes, etc., aggregating in face value $20,000 or more for plaintiff's and his associate directors' use and benefit and from which he received and retained two partial payments, one of which was accepted four and one-half years after the date on which the $20,000 had been put into the bank. We hold that there was sufficient consideration to support the transaction.

It is argued, however, by learned counsel for appellant, that the directors of a corporation, in an action such as this, must be considered trustees for the stockholders of the corporation and as such entitled to be indemnified against liabilities incurred or moneys advanced by them as directors for the benefit of the corporation, on the theory that the cestuis que trust are liable to their trustees for any liability incurred or moneys advanced relating to the trust. Whether the plaintiff could have recovered had the directors, pursuant to the demand of the clearing house, merely deposited $20,000 to the credit of the bank and nothing further, is a question which under the facts in this case is not before us. Here the admitted facts show a resolution of the board of directors of the bank, seconded by and voted for by plaintiff, whereby in consideration of the

payment of the $20,000 to the bank, the bank transferred to a trustee for the use and benefit of the plaintiff and his associate directors, certain notes, etc., which proposition was accepted by the plaintiff and his said associate directors and plaintiff's pro rata share of the moneys which this trustee collected from the securities in his hands was voluntarily and without objection accepted by this plaintiff over four years after the $20,000 had been paid in to the bank. And while on this point it is to be remembered that according to the record the bank, in January, 1910, had a surplus of $13,550 and an undivided profit of $7055.56, totaling assets of $20,605.56 over and above the capital of the bank, which would have admitted of the bank paying back the $20,000 paid in by the plaintiff and his associate directors, and still have left the bank's assets $605.56 over and above its capital, yet in July of that same year the plaintiff accepted $75.00 as a part payment *out of the funds* held by Kroeger as trustee, and again, over four and one-half years later, in 1913, plaintiff accepted $24.57 from Kroeger as trustee. The facts are not component with the contention of the learned counsel for appellant and we rule this point against appellant.

Duress is next urged by appellant. It will be noted that the duress, if any, must be chargeable against the credit Clearing House Association and not against the defendant bank. But discussion of this phase of the question is not necessary in our view of the case, for as was stated in Wood v. Telephone Co., 223 Mo. 537, 1. c. 564, 123 S. W. 6, "a contract procured by duress is not void but only voidable. If the party elects to repudiate it, he must do so within a reasonable time after the duress has been removed," (See also Bushnell v. Loomis, 234 Mo. 371, 137 S. W. 257) and the plaintiff might well be denied his claim on that ground alone. But beyond that the question of duress is not the controlling factor in this case in that the cancelled checks, one for $75 and the other for $24.57, which were introduced in evidence, were made out in plaintiff's name and bore his endorsements, and were admitted by plaintiff

as having been cashed by him, were payments from Kroeger, trustee, from collections made by him out of the several items turned over to him for the benefit of the several directors who put up the $20,000, and these acts of acceptance on the part of plaintiff are conclusive and make out such a case of ratification as to warrant the trial court to have so declared it as a matter of law. [See Bushnell v. Loomis, supra; Brown v. Worthingham, 162 Mo. App. 508, 1. c. 518; Ferrari v. Board of Health (Fla.), 5 South. 1; Sornberger v. Sanford (Neb.), 52 N. W. 368.] The time which had elapsed after the alleged duress was removed, which in this case might justly be construed as an unreasonable delay, accompanied as it is with acts which recognized the contract between the defendant bank and the several directors, as expressed in the resolution passed by the board of directors, April 29, 1909, whereby certain items were turned over to Kroeger as trustee, for plaintiff and his associate directors, must be construed as express ratification thereof and plaintiff's election to abide thereby.

From our views, as expressed above, it follows that plaintiff failed to make out a case sufficient to go to the jury and that the learned trial judge committed no error in so holding. The judgment is accordingly affirmed.

*Reynolds, P. J.*, and *Allen, J.*, concur.