ARTHUR FELS BOND & MORTGAGE COMPANY, a Corporation, Appellant,
v. SAMUEL POLLOCK and ROSE POLLOCK.—149 S. W. (2d) 356.

Division Two, April 3, 1941.

854

*Lewis, Rice, Tucker, Allen & Chubb, Lyle M. Allen, Joseph W. Lewis, Jr.,* and *Robert T. Burch* for appellant.

*Jones, Hocker, Gladney & Grand* and *Vincent L. Boisaubin* for respondents.

BOHLING, C.—Action by Arthur Fels Bond and Mortgage Company, a corporation, payee, for an alleged balance of $23,250 on a $25,000 negotiable non-interest bearing joint and several note of Samuel Pollock and Rose Pollock, husband and wife, dated at St. Louis, Missouri, November 4, 1937, and payable at the office of said payee in Kansas City, Missouri, in consecutive monthly installments of $250 beginning December 4, 1937, with the option in the payee of declaring the whole unpaid balance due and payable on default in the payment of any monthly installment. Suit followed default of the August, 1938, payment. Defendants filed a joint answer and counterclaim. The answer pleaded failure of consideration and duress; and the counterclaim, on like grounds, sought the recovery of $4,000 paid plaintiff at the time of executing the note and $1,750 partial payments thereafter made by defendants. The trial court withdrew defendants' plea of want of consideration. The verdict, concurred in by nine jurors, was for defendants on plaintiff's cause of action and for plaintiff on defendants' counterclaim. Plaintiff contends that defendants failed to make a submissible case on the issues

of failure of consideration and duress; and, consequently, that plaintiff was entitled to a directed verdict.

Defendants owned the stock in "4605 Lindell Boulevard, Inc.," a corporation, which owned the Park Royal Apartments located at 4605 Lindell Boulevard, St. Louis, Missouri. In May, 1937, this property was subject to an outstanding indebtedness of $645,000 of an original $650,000 bond issue. Plaintiff had acted as financial agent in marketing the bonds. Plaintiff, and Arthur Fels, its president, and members of his family held $275,000 of said bonds. $161,000 of said $275,000 bonds had been pledged with Irving and Otto Hirsch to secure an indebtedness of $140,000 of plaintiff corporation. Defendants conducted negotiations with plaintiff, acting through said president, looking to the refinancing of the property by a new loan of $400,000 and the retirement of the original bonds on the basis of 60 cents on the dollar. The pledge of $161,000 of the bonds with the Hirschs presented difficulties.

Mr. Pollock testified to the following effect: That on May 11, 1937, defendants had a conference with Arthur Fels at his office in Kansas City; that they informed him they had a commitment of $400,000.; that Fels informed them the Hirschs held a block of the original bonds as collateral and the refinancing could not be consummated without said bonds; that witness had no information concerning the details of the Fels-Hirschs' transactions; that Fels informed them plaintiff could secure no consideration from the Hirschs but he, Pollock, should present the matter to Otto Hirsch on the theory that whatever discount the Hirschs would allow on plaintiff's indebtedness would inure to the benefit of the Pollocks in the refinancing; that he, Pollock, was to represent that he would pay the Hirschs any difference between the discount allowed plaintiff by the Hirschs and the discount to be had on the Park Royal Apartments bonds but, as between plaintiff and defendants, plaintiff would furnish Pollock the necessary funds. On May 11, 1937, the Lindell Boulevard corporation and Mr. Pollock agreed to pay plaintiff $10,000, with no other additional charges or expenses, for services in effecting the refinancing. Witness took the matter up with the Hirschs. They agreed to a 10 per cent discount on plaintiff's $140,000 indebtedness; i. e., $14,000, leaving a balance of $126,000. Sixty per cent of $161,000 is $96,600. The difference between $126,000 and $96,600 is $29,400—the amount by which the Fels-Hirsch and the Fels-Pollock transactions failed to cancel out.

Foreclosure proceedings were resorted to. The foreclosure was set for October 20, 1937, at the post office door in St. Louis. Mr. Pollock testified that prior to the sale and at the post office he and plaintiff signed a typewritten contract covering their agreement; that Mr. Fels purchased the property for plaintiff, bidding $400,000 therefor; that after the sale Mr. Fels called him aside and told him the typewritten contract would not be performed unless defendants took

care of the difference due the Hirschs; that witness asked what is going to happen to the property and Mr. Fels answered: "You are going to manage it;" that witness said put it in writing; and that, in the circumstances and thinking, although not sure of it, that plaintiff would not insist on getting the note, he initialed, with Mr. Fels, the provisions thereupon inserted in longhand in the contract. This instrument, in the nature of a proposal by plaintiff to Mr. Pollock, bearing date of October 20, 1937, with the longhand provisions italicized and caption and signatures omitted, read:

"Confirming our understanding, if we become the purchaser at the trustee's sale of Forty-Six Hundred and Five Lindell Boulevard, Incorporated, property at the Post Office door on today noon, we agree that you shall have twenty (20) days from today within which to try and complete the loan transaction on which you are working, and that we will request the trustee not to make deed to us until after the expiration of said twenty days so that if you are able to complete the loan and net to us or the parties that we represent at least sixty cents on the dollar net for the bondholders, both depositing and nondepositing, then we agree that instead of taking title in our name or our nominee, we will request Mr. Salkey, as trustee, to execute the trustee's deed to you or to your nominee.

"In the event that you are not able to complete this transaction within said twenty days and we take title, receiving for that purpose a deed from the trustee, then you will have two months from said date, namely two months plus twenty days from this date, within which you may work out your loan proposition and be in a position to pay us sixty cents net on the dollar for the depositing and nondepositing bondholders, and upon making such payment to us, then we will convey to you the title to said property, conveying either to you or to your nominee.

"You have stated that it might be necessary to have court proceedings in order to clear the title and that that might require a time beyond eighty (80) days from this date. In the event that such court proceedings are required, then you shall have such a reasonable time after the completion of such court proceedings within which we agree to cause title to be conveyed to you or your nominee, but for such extended period of time beyond eighty* *twenty* days before title will be conveyed to you or your nominee, you will have to pay on a basis of sixty cents net to the bondholders plus 5% on said sixty cents net, said interest to commence as of eighty* *twenty* days from this date up until the time that you make payment. The interest which commences eighty* *twenty* days from this date must be paid at least every other month while the court proceedings are pending.

"*During such extended period of time beyond twenty days and beyond eighty days and during pendency of such suit, you may remain in possession of and operate said property.*

---

*"Eighty" is crossed out.

"*You agree to pay us $4000 in cash on receiving title and also to deliver to us a note for $25,000 payable $250 monthly and without interest to be signed by you and your wife.*

"This agreement between us is made for valuable consideration, each moving to the other, and if the above terms are agreeable to you kindly indicate your acceptance at the end."

The parties met in the offices of Salkey & Jones, attorneys, in St. Louis, on November 4, 1937, to consummate the transaction. Mr. Pollock testified that Mr. Fels wanted defendants to sign the note; that defendants did not want to sign it; that Mr. Fels said: "The deal is off;" that defendants saw they were "licked" and executed the note; that Mr. Fels was in another room, was afraid to come in; "I would have killed him right then and there;" that $4,000 was paid plaintiff and the note executed and delivered to plaintiff and a deed covering the property to the Park Realty Company, a corporation, his nominee (organized by Salkey & Jones and owned by his son, his daughter and a friend), was received.

Thereafter Mr. and Mrs. Pollock made nine payments totaling $1,750 on the note.

The testimony on behalf of plaintiff differed materially. It was to the effect, briefly, that the Pollocks agreed to take care of the difference due the Hirschs; that, after negotiations with the Hirschs, they failed in their efforts and the day prior to the foreclosure it was finally understood that the Hirschs would accept plaintiff's note for the difference and the Pollocks were to pay plaintiff $4,000 cash and give plaintiff their note for $25,400; that after the sale and at the post office the typewritten contract was shown to Mr. Fels with the request he accommodate the parties by signing it there; that he called attention to its omissions but overlooked $400 of the principal of the note; that the attorney who drafted the contract explained the omissions were an oversight and inserted the longhand provisions; that the contract was then signed and the transaction finally consummated on November 4, 1937, without complaint on the part of the Pollocks.

One may not consider a portion of the longhand insertions in the instrument without considering the remainder thereof. Under defendants' version, the parties undertook to merge their understandings in the typewritten portion. Said provisions did not cover those appearing in longhand. Under the longhand provisions defendant Pollock acquired the right to retain possession of the property.

An inadequacy does not constitute a failure of consideration. [Cox v. A. P. Green Fire Brick Co., 230 Mo. App. 774, 783, 75 S. W. (2d) 621, 625 [3]; Little Rock Surgical Co. v. Bowers, 227 Mo. App. 744, 748, 42 S. W. (2d) 367, 369 [3-7].] There was no error in withdrawing the issue of failure of consideration.

Defendants say the facts established "moral duress" or

"business complusion," citing Sec. 3070, R. S. 1939, Mo. Stat. Ann., sec. 2683, p. 675; 17 Am. Jur., p. 879, sec. 7; Annotation, 79 A. L. R. 657; American Brewing Co. v. St. Louis, 187 Mo. 367, 377, 86 S. W. 129, 132; Lappin v. Crawford, 186 Mo. 462, 470, 85 S. W. 535, 538, and 221 Mo. 380, 390, 120 S. W. 605, 607; White v. McCoy Land Co., 229 Mo. App. 1019, 1040, 87 S. W. (2d) 672, 685[5]; Wells v. Adams, 88 Mo. App. 215, 225; Fout v. Giraldin, 64 Mo. App. 165, 169; Niedermeyer v. University of Missouri, 61 Mo. App. 654, 661; Westlake v. St. Louis, 77 Mo. 47, 50. Plaintiff undertakes to distinguish these cases from the instant case, especially the American Brewing Co. and Westlake, as well as the Niedermeyer cases (see 17 Am. Jur. 800, sec. 8). We think a ruling of the case does not necessarily require a discussion of duress, as it appears that defendants waived the duress, if any, and ratified the transactions.

Defendants could have instituted an action to protect their rights prior to the execution of the note, or thereafter prior to the payment of the first installment. At the time of the alleged duress on October 20, Mr. Pollock secured the insertion of a provision beneficial to defendants. His undisclosed thought that plaintiff would not insist upon the performance of the provisions beneficial to plaintiff furnishes no legal grounds for avoiding the longhand provisions he initialed. That he was ready to kill Mr. Fels on November 4 does not aid the plea of duress, as the contemplated action indicated a will to take the necessary steps to protect his just rights. Contracts of the nature involved are voidable, not void, by reason of the claimed duress. Defendants accepted the longhand provisions beneficial to them. Thereafter, they paid the $4,000 cash payment, executed the note in suit, accepted the conveyance of the property to their nominee and admittedly made nine payments, totaling $1,750, on the note, the last being credited July 6, 1938. Mr. Pollock, replying in writing to a complaint covering the nonpayment of the June, 1938, installment, made no mention of any duress but, after stating he had been ill, concluded: "You will please have patience this month as I could not get any money together to pay, but will positive pay next month."

Wood v. Kansas City Home Tel. Co., 223 Mo. 537, 123 S. W. 6, states: "Contracts induced by duress are ordinarily voidable, not void, and to void them the party so seeking must place the parties *in statu quo* either by tender beforehand or in the bill in equity. . . . He must repudiate as a whole. In this there is a difference between actions for fraud and deceit, and actions to cancel a contract for duress. In fraud and deceit, the party ratifies the contract as made, but says, because the thing delivered is not up to the contract representations, I have been damaged by deceit and fraud. To cancel a contract by reason of duress the contract must of necessity be repudiated, and not only so, but the parties must be placed *in statu quo*.

The party seeking to avoid cannot keep 'the sweets' and repudiate 'the bitter.' " (l. c. 563 and 14, respectively.) And, quoting 10 Am. and Eng. Ency. Law (2 Ed.), p. 337: " 'If he remains silent for an unreasonable length of time, or if he keeps property which he may have acquired under the contract, or recognizes the validity of it, either by making payments thereon or otherwise, he will be held to have elected to waive the duress and ratify the contract.' . . . Rescission of a contract for fraud must occur on the discovery of the fraud. . . . By parity of reasoning a rescission for duress must occur when the duress is removed." (l. c. 564 and 14, respectively.) [See Bushnell v. Loomis, 234 Mo. 371, 382(II), 137 S. W. 257, 259 [2, 3], 36 L. R. A. (N. S.) 1029; Farmers' State Bank v. Day (Mo. App.), 226 S. W. 595, 596; Deibel v. Jefferson Bank, 200 Mo. App. 541, 559, 207 S. W. 869, 874[3].]

Defendants' brief states that plaintiff failed to plead waiver of the alleged duress or ratification of the agreement and may not rely thereon. The rule of law advanced is generally true (Ambruster v. Ambruster, 326 Mo. 51, 75, 31 S. W. (2d) 28, 38[14]), but an exception exists where, as here, the waiver or ratification appears in the case made by the party against whom the waiver or ratification is invoked. [Ornellas v. Moynihan (Mo. App.), 16 S. W. (2d) 1007, 1011[6]; Grafeman Dairy Co. v. Northwestern Bank, 315 Mo. 849, 870, 288 S. W. 359, 368; State ex rel. v. Haid, 328 Mo. 739, 749, 41 S. W. (2d) 806, 809[10]; Prudential Ins. Co. v. German Mut. Fire Ins. Assn., 231 Mo. App. 699, 709(9), 105 S. W. (2d) 1001, 1008[8]; Cf. Koewing v. Greene County B. & L. Assn., 327 Mo. 680, 688, 38 S. W. (2d) 40, 43[6].]

Plaintiff's case is based upon a written contract and there is no dispute as to the amount involved. No valid defense was interposed to plaintiff's cause of action. Plaintiff was entitled to a directed verdict. [Home Trust Co. v. Josephson (Banc), 339 Mo. 170, 186, 95 S. W. (2d) 1148, 1156[13]; Central States Life Ins. Co. v. Bloom, 345 Mo. 982, 986, 137 S. W. (2d) 517, 519[4, 5].]

The judgment is reversed and the cause remanded with directions to enter judgment for plaintiff. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.