**In re Thomas Edwin POWELL and Amy Ann Powell, Debtors.**

**Bankruptcy No. 83–02951–S–11.**

United States Bankruptcy Court, W.D. Missouri, S.D.

Feb. 14, 1985.

---

**110**

Theodore L. Johnson III, Springfield, Mo., for Commerce Bank of Springfield.

Gary A. Love, Douglas Winchester, Springfield, Mo., for Amy Powell.

Mark Fitzsimmons, Springfield, Mo., for Tom Powell.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

In this case Commerce Bank of Springfield claims a security interest in the residence owned by debtors. Mrs. Powell contends that the security interest is not valid as to her asserting that the guaranty which gave rise to the obligation was without consideration and the result of duress as well as fraudulent and unconscionable con-

duct on the part of Bank officers and employees.

A hearing was held on the Bank's motion to determine secured status. Debtors appeared in person and by their respective counsel. The Bank appeared by counsel and representatives. Evidence was heard and the matter taken under advisement, pending receipt of briefs which have now been filed.

I

The evidence shows that debtors owned a corporation which was engaged in the contracting of heating and cooling construction. Mr. Powell was president of the corporation and actively worked in the business. Mrs. Powell was secretary but otherwise took no active part in the business. Debtors had a long history of borrowing from the Bank. These loans were for corporate purposes and were secured by assets of the business. It also appears that debtors signed, in January of 1974, a guaranty of the corporate debt.

In January of 1981 debtors gave the Bank another guaranty secured by a deed of trust on the business property in Springfield, Missouri. Mrs. Powell signed the guaranty and also the guaranty deed of trust. At that time the business was having financial difficulties and the loans were restructured. On April 28, 1981, debtors signed an additional guaranty of the corporate debt, securing the guaranty with, inter alia, a second deed of trust on their residence in Springfield. In April the corporation had purchased a computer and had written a number of checks for which there were no funds. No note was signed on April 28, 1981 but funds were advanced and loans renewed both before and after the date of the April guaranty. Specifically some $30,000 was used to pay for the computer and for the insufficient funds checks. Mrs. Powell received none of this money personally.

The company filed for bankruptcy in May of 1982. The Powells also filed personally. Thereafter they separated and are involved

in an action in state court for dissolution of their marriage.

## II

Mrs. Powell contends that she was coerced into signing the guaranty deed of trust. She testified that she did not want to go to the Bank in April and did not want to sign the papers. Her husband requested that she attend and that she sign the various documents. She testified that there was quite a long conversation with the bank representative who at one point, so she testified, stood up and banged the desk to emphasize that the Bank insisted upon execution of the papers. Her husband did not recall whether the bank representative actually banged the desk but there is little question that there was some intensity to the meeting and that the bank representative made it very clear that the papers had to be signed or there would be no more money for the company.

Mrs. Powell stated that she told the bank officer that she wanted to take the papers to a lawyer. He was not very happy about her doing that but told her to take the papers and be back in the early afternoon. She did not do so because her husband told her everything would be alright and she should sign. She did consult an attorney after signing but made no effort to set aside the transaction.

Mrs. Powell testified on direct examination that she was told that the Bank would not take her home because these were corporate debts. Bank representatives who testified denied that any such representation was made. Mrs. Powell admitted, on cross examination, that she knew the house would be lost if the business could not repay the loans. One of the reasons she was upset and did not want to attend the meeting at the Bank was because she did not want to sign over the property.

The issue of duress is one of Missouri law.

"With respect to the claim of duress, the legal test to be applied is whether the injured party was bereft of the free exercise of his will power—whether he was subjected to such a state of mind as to be deprived of free moral agency". *Hess v. Bennett,* 554 S.W.2d 503, 506 (Mo.App. 1977).

See also *Bennett v. Mahon,* 180 F.2d 224 (8th Cir.1950); *United Tel. Co. of Missouri v. Horn,* 610 S.W.2d 701 (Mo.App.1980); and *Arthur Fels Bond & Mortgage Co. v. Pollock,* 347 Mo. 853, 149 S.W.2d 356 (1941).

In *United Tel. Co. of Missouri,* supra, the court held that:

"In order for there to be 'duress', a person must be subjected to pressure which overcomes his will and coerces him to comply with demands to which he would not yield if acting as a free agent". 610 S.W.2d at 705.

In *Weisert v. Bramman,* 358 Mo. 636, 216 S.W.2d 430 (1948) the court noted that "it is also the general rule that a claim of duress cannot be sustained where there is full knowledge of the facts of the situation and ample time and opportunity for full and free investigation, deliberation and reflection". 216 S.W.2d at 434. The court went on to state that "[a] party, who is entitled to avoid a contract on the ground of duress should repudiate it promptly after the duress has been removed. Silence and acquiescence for a considerable period thereafter, action in accord with it, and acceptance of benefits under it, amount to a ratification". 216 S.W.2d at 435.

The evidence here shows that Mrs. Powell knew why the Bank wanted the additional collateral and what would happen to the property if there was a default. She was not happy with the Bank's demand and disputed the validity of it. She wanted to consult an attorney. The Bank representative agreed to that request although not graciously. Mrs. Powell undoubtedly felt pressure to sign but it was her husband's persuasion and the company's need for funds, not Bank representative intimidation, that caused her to sign. She wanted to be supportive of her husband and of the business. They had no other source of income.

Mrs. Powell could have walked away from the transaction. She could have taken the risk that the Bank would continue to loan anyway because the value of much of its security depended upon the completion of work in progress. The suggestion in the evidence, although not clear enough to make a finding, is that the overdrafts had been paid prior to the guaranty being taken. In addition the Bank had two existing personal guarantees of corporate debt. All the guaranty deed of trust gave the Bank was a way to avoid a race with other creditors to obtain a judgment which would be a lien against the real property owned personally. But Mr. Powell persuaded his wife not to take that risk.

The Court finds that Mrs. Powell was fully informed as to the transaction and the consequences of signing over the property. The Court further finds that she had opportunity for investigation and reflection but chose not to utilize such time because of her husband's request and not be reason of any of the Bank's conduct. While the meeting at the Bank was not pleasant, such an attitude does not rise to the level of legal duress. The Court also notes that the evidence shows that loans were renewed for a long period of time after April of 1981 and that Mrs. Powell did not attempt to repudiate the transaction until late 1982 or early 1983.

The Court holds that Mrs. Powell's signature on the guaranty deed of trust of April 1981 was not the product of duress. The Court further finds that Mr. Powell executed the documents freely and without reservation.

### III

Mrs. Powell contends further that the guaranty deed of trust is void because it is without consideration. She received none of the funds. All were used for corporate purposes. Some may have been advanced prior to the execution of the documents. There is evidence, however, that for many months after the April signing the Bank continued to extend credit to the business, at least by renewals and extensions.

The schedules show substantial equity in property held personally before assessing the guaranty deed of trust against it. The evidence shows some direct consideration, up to $30,000, in relation to the execution of the guaranty and the deed of trust. The evidence also shows a continuation of credit to the time of the filing of the bankruptcy. While these amounts as a whole exceed the value of the equity in the home, there was other security and this Court cannot determine whether the consideration extended on or after April 28, 1981, was equal to or exceeded that equity. But "[an] inadequacy does not constitute a failure of consideration". *Arthur Fels Bond & Mortgage Co. v. Pollock*, supra 149 S.W.2d at 359.

> "The general rule is that mere absence of consideration is not sufficient to warrant relief by way of equitable cancellation of an executed ... deed in the absence of some additional circumstance creating an independent ground for granting cancellation, such as fraud or undue influence". *Drake v. Greener*, 523 S.W.2d 601, 606 (Mo.App.1975).

See also *Radford v. Radford*, 388 S.W.2d 33 (Mo.1965) and *Empire Gas Corp. v. Small's LP Gas Co.*, 637 S.W.2d 239 (Mo. App.1982).

The Court finds that there was consideration here for the execution of the guaranty and the guaranty deed of trust. Benefit to a third party is sufficient. *Industrial Bank & Trust Co. v. Hesselberg*, 195 S.W.2d 470 (Mo.1946). The Court also finds that the circumstances surrounding the execution of the April 1981 guaranty deed of trust, although unpleasant and somewhat gratuitous on the Bank's part, do not rise to the level of duress or undue influence such as would justify the cancellation of the instruments. The Court holds Commerce Bank to be the holder of a claim secured in part by the guaranty deed of trust executed April 28, 1981.